*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KURT GRIGGS-SWANSON,

      Plaintiff-Appellant,

v

BEAUMONT HOSPITAL FARMINGTON HILLS,
BOTSFORD GENERAL HOSPITAL, ELAINE A.
PERKINS, P.A., DIANE KAISER, M.D., SABAH
BACHIR, R.N., and ERIN O'DONNELL, R.N.,

      Defendants-Appellees.

UNPUBLISHED
July 10, 2026
11:14 AM

No. 371014
Oakland Circuit Court
LC No. 2022-194513-NH

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Plaintiff, Kurt Griggs-Swanson, appeals as of right the trial court's order granting summary disposition for defendants.[1] We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff went to defendant Beaumont Hospital Farmington Hills (formerly known as Botsford General Hospital) (the Hospital) on March 29, 2020, at the beginning of the COVID-19 pandemic, seeking a test to determine if he was infected with the virus. He was denied a COVID-19 test and sent home.

---

[1] In the initial complaint, plaintiff raised allegations against defendants Elaine A. Perkins, Sabah Bachir, and Erin O'Donnell, individuals who purportedly assisted or interacted with plaintiff. At the hearing on the initial motion seeking dismissal, the trial court dismissed these individuals in light of plaintiff's voluntary agreement to do so. However, in the amended complaint filed the day after the hearing, plaintiff retained these three individuals in the caption but deleted the complaint's factual allegations against them. Accordingly, our use of "defendants" collectively refers to Beaumont Hospital Farmington Hills and Dr. Diane Kaiser.

-1-

On his second visit on March 31, 2020, plaintiff was denied a COVID-19 test and admission to the Hospital, although he believed that he had COVID-19. Plaintiff alleged that he was physically assaulted by a member of the Hospital's security staff after plaintiff refused to leave the triage area, consisting of a tent set up in the parking lot. Plaintiff apparently arrived at the Hospital in an ambulance, did not have a ride to get back home, and did not want to expose other household members to his condition.

As a result of the second hospital visit, plaintiff filed suit against the Hospital and an unknown security employee, alleging assault and battery and negligence arising from his physical removal out of the triage area by the Hospital's security staff. The trial court granted summary disposition for the Hospital and the officer under MCR 2.116(C)(10). Plaintiff appealed that decision, and this Court affirmed the trial court's grant of summary disposition. *Griggs-Swanson v Beaumont Hosp Farmington Hills*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 364134) (*Griggs-Swanson I*), lv den ___ Mich ___; 16 NW3d 743 (2025).

While the assault/negligence suit was still pending in the trial court, plaintiff filed this case, against the Hospital and Dr. Diane Kaiser who assessed plaintiff's condition and decided that he did not require admission to the Hospital. Plaintiff alleged that defendants were liable for medical malpractice, and he later amended his complaint to allege gross negligence and violation of his civil rights under 42 USC 1983. Defendants removed this matter to the federal district court, where the civil rights claim was dismissed. The case then returned to the trial court. Defendants moved for summary disposition, and the trial court granted the dispositive motion with prejudice. The trial court concluded that plaintiff's medical malpractice claim was barred by immunity under the Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471 *et seq*., and that the gross negligence claim sounded in medical malpractice such that it was also barred by immunity. From this decision, plaintiff appeals.

## II. IMMUNITY UNDER THE PHCIA

Defendants moved for summary disposition of plaintiff's amended complaint.[2] This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

A motion for summary disposition premised on immunity is properly brought under MCR 2.116(C)(7). *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The application of immunity presents a question of law if reasonable minds could not differ on the

---

[2] Defendants moved for summary disposition of plaintiff's amended complaint under MCR 2.116(C)(7), (8), and (10). The trial court did not expressly state the section of MCR 2.116 upon which it relied. However, it concluded that the medical malpractice action was barred by immunity under the PHCIA, MCL 691.1475, and that defendants were also entitled to immunity of the gross negligence claim because it sounded in medical malpractice. Accordingly, we treat the motion as having been granted under MCR 2.116(C)(7) ("Entry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law[.]").

legal effect of the facts. *Milot v Dep't of Transp*, 318 Mich App 272, 275; 897 NW2d 248 (2016). "When reviewing a motion for summary disposition premised on immunity, this Court examines the affidavits, depositions, admissions, and other documentary evidence to determine whether the moving party is entitled to immunity as a matter of law." *Forton v St Clair Co Public Guardian*, 339 Mich App 73, 82; 981 NW2d 103 (2021).

Plaintiff contends that the trial court erred in concluding that plaintiff failed to demonstrate facts to support gross negligence and that the gross negligence claims sound in medical malpractice. We disagree.

MCL 691.1475 in the PHCIA provides:

A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility.

Per MCL 691.1477, immunity granted by MCL 691.1475 applies retroactively "on or after March 29, 2020 and before July 14, 2020." Plaintiff's claims of medical malpractice and gross negligence fall within that timeframe. MCL 691.1473(a) defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

Application of PHCIA's immunity provision was addressed in *Franklin v McLaren Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 8-9. In *Franklin*, the plaintiff went to the defendant hospital complaining of shortness of breath on March 31, 2020. He was admitted and intubated. On April 1, 2020, the plaintiff received a consultation for acute respiratory failure and acute kidney injury. Additionally, on April 6, 2020, the nursing notes indicated that the plaintiff had a pressure ulcer on his coccyx. The plaintiff claimed that he developed additional pressure ulcers. The plaintiff filed a negligence action alleging the defendant hospital's nursing staff failed to appropriately treat him. *Id*. at ___, slip op at 1-2.

The trial court applied the PHCIA's immunity provision and granted summary disposition in favor of the defendant hospital. This Court affirmed, explaining that, because the pandemic severely taxed all medical services, hospital resources were redirected to fight COVID-19, which impacted other areas of medical care. Because the pandemic impacted all healthcare services during the beginning of the pandemic, this Court held that immunity under the PHCIA includes healthcare services provided "to those infected with COVID-19 and regular healthcare services provided during the statutory period." *Id*. at ___; slip op at 8-9. This Court concluded that immunity applied to the defendant hospital despite the multiple pressure ulcers that developed during the defendant hospital's care because those "injuries were a consequence of the care [the] defendant [hospital] provided in response to COVID-19." This sequence of events was governed by the plain language of MCL 691.1475. *Id*. at ___; slip op at 9-10.

Further, in *Skipper-Baines v Bd of Hosp Managers for Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365137); slip op at 4, this Court held that, in order for immunity to apply, there must be "some connection" between the nature of the malpractice alleged and the COVID-19 pandemic. This Court explained that immunity applied to circumstances beyond actual treatment for COVID-19:

> We do not hold that immunity only applies when a patient is being treated for COVID-19, but it is clear that there must be some connection. For example, if an unrelated emergency was not timely dealt with because hospital staff were overwhelmed with COVID-19 patients, there might be immunity. If a hospital ran out of ventilators, there might be immunity for cases involving patients who needed ventilators for unrelated ailments. [*Id.*]

However, in *Skipper-Baines*, ___ Mich App at ___; slip op at 1-2, 4, immunity was not available because the plaintiff's decedent was hospitalized for gallbladder surgery and was severely attacked by his roommate. In that case, immunity was not applicable because of the lack of a connection between the pandemic and any alleged negligence or malpractice regarding the decedent's hospitalization, even though the ultimate cause of death was related to COVID-19 contracted during the hospitalization. *Id.* at ___; slip op at 2-4.

In this case, plaintiff contends that immunity was not available to defendants under the PHCIA because defendants were not providing "health care services in support of this state's response to the COVID-19 pandemic." To support his argument, plaintiff relies on the testimony from the parties' witnesses to claim that he actually was never treated for COVID-19, when he was not tested, but was promptly discharged from the Hospital in a short period of time. That is, he was never tested for, treated for, or diagnosed with COVID-19, and therefore, immunity under the PHCIA was not applicable to defendants.

The deposition testimony of the witnesses demonstrates that the Hospital's staff performed an assessment of plaintiff to determine whether he was showing signs of COVID-19. Although he was not tested,[3] he was still evaluated for symptoms of the virus. Even if plaintiff had COVID-19 during his visit on March 31, 2020, his symptoms were not severe enough to warrant admission to the Hospital and possibly take a hospital bed away from an individual who was experiencing more serious symptoms. Therefore, plaintiff was instructed to return to the Hospital if his symptoms worsened. He was given some prescriptions to treat his symptoms. The fact that plaintiff was admitted for COVID-19 four days later to another hospital does not prove that his condition, when he was seen by defendants on March 31, 2020, supported his admission to the Hospital at that time.

---

[3] It was undisputed that, at the time of his visit to the Hospital, testing supplies for COVID-19 were not widely available. Accordingly, medical personnel had to exercise discretion in deciding which patients should receive actual tests and which should be evaluated for symptoms. Thus, the failure to order COVID-19 testing does not prove that plaintiff was not assessed for the virus.

This case is in accord with *Franklin* and *Skipper-Baines* because the deposition testimony reflects that plaintiff was assessed for symptoms of COVID-19 to determine whether his symptoms were serious enough to support admitting him for further treatment and testing. Due to plaintiff being screened for COVID-19, there is a direct connection to the virus. The trial court did not err in ruling that immunity was available to defendants, unless plaintiff could prove an exception applied.

To the extent that plaintiff's claims involve only negligence or malpractice, not gross negligence, his claims were properly barred by immunity granted under the PHCIA. The trial court did not err in granting summary disposition for defendants under MCR 2.116(C)(7) on the ground that immunity under the PHCIA applied.

## III. GROSS NEGLIGENCE

Plaintiff also argues that it was error for the trial court to dismiss his claim for gross negligence, by ruling that the claim sounded only in medical malpractice. We disagree.

After the initial dismissal of the action, plaintiff immediately, without leave of the trial court, filed an amended complaint. Plaintiff was permitted to amend his complaint to allege a claim for gross negligence to avoid immunity under the PHCIA, MCL 691.1475. Although plaintiff labeled his action as one for gross negligence, he failed to allege or produce any facts that would qualify as gross negligence.

In *Bryant v Oakpointe Villa Nursing Centre, Inc*, 471 Mich 411, 422-423; 684 NW2d 864 (2004), the Michigan Supreme Court explained that a medical malpractice claim differs from ordinary negligence because it includes (1) conduct occurring during the course of a professional relationship and (2) raises questions involving medical judgment, not ordinary negligence, which typically requires a jury to be aided by expert witness testimony. It is apparent that plaintiff's claims against defendants involved medical malpractice when there was a professional relationship involved because plaintiff sought medical care from defendants. Second, it is evident that plaintiff is challenging the decisions made about treating or admitting him for COVID-19, which also requires evaluating the medical judgments made by defendants. Even though plaintiff's claims are plainly premised on medical malpractice, he nonetheless claims that he viably raised a claim for gross negligence arising out of that professional relationship because the theories overlap.

Under MCL 691.1473(a), plaintiff must show gross negligence by proof of "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." A plaintiff may not survive a motion for summary disposition on the ground that the claim is barred by immunity, by relying on ordinary negligence, where gross negligence is required. *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 382-383; 838 NW2d 720 (2013). To show gross negligence, the conduct involved must be substantially more than negligence and, if no reasonable jury could find that the conduct amounted to gross negligence, the plaintiff's claim must be dismissed. *Id*. at 383. After reviewing plaintiff's amended complaint, it is apparent that he does not have evidence to prove gross negligence.

The majority of the allegations in plaintiff's amended complaint do not involve any conduct by defendants that would qualify as gross negligence. First, the majority of the allegations involve

breaches of the standard of care related to medical malpractice only. Such allegations fail to take plaintiff's claim out of the realm of a malpractice action and cannot support a claim of gross negligence. None of the allegations specifically address reckless conduct demonstrating a substantial lack of concern for whether an injury resulted to support a claim involving gross negligence.

Second, the only conceivable allegation that might involve gross negligence is that plaintiff alleged that defendants intentionally declined "to treat Plaintiff knowing that he had COVID-19." But Dr. Kaiser's testimony showed that defendants were aware that plaintiff may have had COVID-19. Yet, Dr. Kaiser, employing her medical judgment, made the decision not to admit him because his condition was stable and he did not require hospitalization at that time. Her medical opinion does not reflect "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." The Hospital had set up outdoor triage tents and was presented with potential patients in a line of cars seeking treatment. The Hospital was required to focus on treatment of individuals presenting with more pressing symptoms in light of limited bed availability. Indeed, plaintiff was instructed to return if his symptoms worsened.

Considering all of plaintiff's allegations in light of the undisputed material facts, plaintiff could not prevail on a possible claim of gross negligence, involving the intentional decision not to admit him, when the undisputed evidence showed that he did not meet the criteria for admission in light of the Hospital's limited bed space at the time he was evaluated and limited testing supplies. The evidence does not show that defendants were reckless to the point that they showed "a substantial lack of concern for whether an injury" would result. MCL 691.1473(a). Instead, because of the pandemic, defendants were required to prioritize who received COVID-19 treatments and admission. The fact that defendants decided plaintiff was not in need of additional treatment, beyond screening his symptoms and instructing him on caring for himself at home, does not provide support for a claim of gross negligence. Accordingly, it was not error for the trial court to determine that the gravamen of plaintiff's claim for gross negligence was actually an action for medical malpractice to which immunity applied, MCR 2.116(C)(7).[4]

## IV. DISCOVERY

In the trial court, plaintiff argued that if the court found grounds to grant defendants' motion for summary disposition, the court should allow him additional time to conduct discovery. In the court's written opinion granting summary disposition, it dismissed plaintiff's claim with prejudice, declining to allow plaintiff to continue to litigate his claim to uncover proof in support of it. We find no error with the court's decision not to allow additional discovery in this matter.

Summary disposition is generally premature if discovery has not been completed, unless there is no fair likelihood that additional discovery will produce support for the nonmoving party's

---

[4] Defendants alternatively argue that the trial court should have granted summary disposition for them on the basis of res judicata, collateral estoppel, or the rule requiring compulsory joinder, MCR 2.203(A). We decline to address the merits of these contentions given that we find no error with the trial court's decision to grant summary disposition on the merits of plaintiff's claims.

position. See *Kern v Kern-Koskela*, 320 Mich App 212, 227; 905 NW2d 453 (2017). A nonmoving party who opposes a motion for summary disposition cannot simply argue that the motion is premature because discovery has not been completed; instead, the party must identify a disputed issue and support that issue with independent evidence. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292-293; 769 NW2d 234 (2009). This may require affidavits detailing the potential testimony that supports the party's position. *Id*.

The only argument plaintiff raises to support conducting additional discovery is that this case involves medical malpractice or treatment, which was not fully explored during his first case against the Hospital that involved his treatment by the security staff. Even if plaintiff's contention that his discovery in this case was limited is true, plaintiff has had sufficient time to develop the facts and theories to support any claim involving alleged gross negligence in his medical care by defendants. Because plaintiff has not offered any new information which arguably could be developed during discovery to support his claim that defendants' conduct amounts to gross negligence, the trial court did not err in granting summary disposition with prejudice.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica